IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Miami Division

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

                Plaintiff,

vs.                                            Civil Action No. _____

USA PARKING SYSTEM, INC.,

                Defendant.
_____/

**PLAINTIFF EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S
COMPLAINT AND DEMAND FOR JURY TRIAL**

This is an action under the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq.* ("ADA"), as amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110–325, 122 Stat 3553 (2008) (codified as amended in scattered sections of 42 U.S.C.), and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981a. The United States Equal Employment Opportunity Commission ("EEOC" or "Commission") alleges that Defendant USA Parking System, Inc., ("USA Parking" or "Defendant") discriminated against Charging Party Kareem E. Dore ("Mr. Dore") when it failed to hire him as a Valet Attendant because of his disability (deafness) in violation of Section 102(a), 42 U.S.C. § 12112(a).

**JURISDICTION AND VENUE**

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. §12117(a), which incorporates by reference Section 706(f)(1) and (3) of

Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended 42 U.S.C. § 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.  The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of Florida, Miami Division.

## **PARTIES**

3.  The Commission is an Agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference §§ 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4.  The Defendant's corporate office is located in Fort Lauderdale, Florida.

5.  Defendant is a parking services company primarily for the hospitality industry doing business in Miami, Florida.

6.  At all relevant times, the Defendant has continuously done business in Florida, and has continuously had at least fifteen employees.

7.  At all relevant times, the Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. § 12111(5), (7), which incorporates by reference 42 U.S.C. 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e (b), (g), and (h).

8.  At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEEDINGS

9. More than thirty days prior to the institution of this lawsuit, Mr. Dore filed a charge of discrimination with the Commission against Defendant alleging disability discrimination in violation of the ADA.

10. The Commission sent Defendant notice of Mr. Dore's discrimination charge.

11. The Commission issued a Letter of Determination on April 14, 2017 finding reasonable cause to believe that Defendant discriminated against Mr. Dore because of his disability (deafness).

12. The Commission engaged in communications with Defendant to provide the Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

13. The Commission was unable to secure from the Defendant a conciliation agreement acceptable to the Commission.

14. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

15. USA Parking manages and operates valet parking services for hotels and other commercial establishments.

16. Kareen Dore has a disability, deafness in both ears, and he is unable to hear.

17. Mr. Dore can communicate verbally, through sign language, lip reading, body language, gestures, in writing, and through the use of electronic devices.

18. Around September or October of 2014, Mr. Dore applied online for a Valet Attendant position with USA Parking.

19. In the beginning of October 2014, USA Parking invited Mr. Dore for an interview

at the Four Seasons Hotel located on Brickell Avenue in Miami.

20. Upon arriving at the Four Seasons for his interview, Mr. Dore informed a USA Parking employee that he was deaf, and then sat down in the waiting area.

21. Several other non-deaf candidates were waiting to be interviewed for the Valet Attendant position in the same waiting area as Mr. Dore.

22. As each candidate was called to be interviewed, they were taken out of the waiting area to an enclosed private space where the interview took place.

23. Mr. Dore was one of the last candidates to be interviewed for the Valet Attendant position at the Four Seasons.

24. Mr. Dore's interview was conducted differently than those of the non-deaf candidates in that Mr. Dore's meeting was shorter and his meeting was held in an open space.

25. During his brief meeting, Mr. Dore communicated with USA Parking through lip reading and through written questions and answers.

26. When asked whether he could perform the job as a Valet Attendant, Mr. Dore unequivocally replied yes, he could do the job.

27. Mr. Dore was not asked any questions at this interview about his ability to perform the essential functions of the Valet Attendant position.

28. USA Parking did not hire Mr. Dore for a Valet Attendant position at the Four Seasons.

29. Mr. Dore was later contacted by USA Parking informing him that his application had been sent to the manager of USA Parking working at the Ritz Carlton Hotel on Miami Beach.

30.     Mr. Dore was then invited for an interview with USA Parking at the Ritz Carlton Hotel located on Miami Beach.

31.     When he arrived at the Ritz Carlton for his interview at USA Parking, he again informed USA Parking that he was deaf.

32.     Mr. Dore was then interviewed by an Assistant Manager named Angel Lopez.

33.     Mr. Dore informed Mr. Lopez that he was deaf and requested that the interview be conducted in written question and answer format as an accommodation for his disability.

34.     Mr. Lopez initially refused to accommodate Mr. Dore's accommodation request.

35.     Mr. Dore explained that he was deaf and that due to his disability, he sought an accommodation for the interview.

36.     Mr. Dore sought to ensure that he had an opportunity to fully and completely respond to interview questions.

37.     Mr. Dore had to repeatedly request that the interview with Mr. Lopez be conducted in written question and answer format, while Mr. Lopez instead insisted on lip reading.

38.     Mr. Dore again asked for the interview to be conducted in a written question and answer format.

39.     During Mr. Dore's interview, Mr. Lopez was visibly uncomfortable interacting with Mr. Dore who was attempting to communicate with Mr. Lopez through written notes.

40.     After several requests by Mr. Dore, Mr. Lopez finally agreed to ask his questions in writing.

41.     During the interview, Mr. Dore explained to Mr. Lopez that he could perform the job of a Valet Attendant.

42.     Mr. Lopez did not ask Mr. Dore about his deafness, the nature or extent of his

deafness, how his deafness affected, if at all, his ability to speak, drive, park and retrieve cars or provide quality customer service.

43. Mr. Lopez asked Mr. Dore if writing was Mr. Dore's only method of communication. Mr. Dore explained that he can communicate verbally and also via different methods, including but not limited to, sign language, text messaging, or through a device.

44. Mr. Lopez asked if Mr. Dore could hear customers talking.

45. When Mr. Dore responded that he could not hear customers talking, Mr. Lopez told Mr. Dore that he could not hear a car behind him.

46. Mr. Lopez ended the interview by telling Mr. Dore that he "had communication difficulties in his speech" and that the "supervisor would ultimately decide whether to hire Mr. Dore given the nature of his disability," or similar words to the same effect.

47. Mr. Lopez recommended and/or decided that Mr. Dore not be hired because he is deaf.

48. At the time of his application and interviews with USA Parking, Mr. Dore had a valid driver's license issued by the State of Florida and at least three years of driving history.

49. Mr. Dore passed the motor vehicle driving record assessment and the background check conducted at the request of USA Parking.

50. Mr. Dore can drive automobiles with manual transmissions.

51. Mr. Dore can communicate in English and in American Sign Language effectively.

52. Mr. Dore is able to perform the job requirements of the Valet Attendant position with or without a reasonable accommodation.

53. USA Parking did not conduct an individualized assessment or individual inquiry to evaluate whether Mr. Dore could perform the job of Valet Attendant.

54. Shortly after his interview with Mr. Lopez, Mr. Dore was contacted and informed that he did not get the job of Valet Attendant explaining that it was because he was "not suitable for the job."

55. The position for Valet Attendant remained open.

56. USA Parking ultimately hired a non-deaf candidate for the Valet Attendant position.

57. As a result, Mr. Dore has been damaged.

## STATEMENT OF CLAIMS

58. Paragraphs 1 through 57 are incorporated by reference as if fully set forth herein.

59. Mr. Dore is a qualified individual with a disability as defined by the ADA.

60. USA Parking discriminated against Mr. Dore in violation of 42 U.S.C. § 12112(a) by denying him employment on the basis of his disability, deafness.

61. USA Parking did not hire Mr. Dore based on assumptions and stereotypes regarding his disability.

62. As a direct and proximate result of the practices complained of in the foregoing paragraphs, Mr. Dore has suffered actual pecuniary and non-pecuniary damage, including but not limited to lost earnings and benefits, emotional pain, suffering, embarrassment, and inconvenience.

63. The unlawful employment practices complained of in the foregoing paragraphs were intentional and were done with malice or with reckless indifference to the federally protected rights of Mr. Dore.

64. The effect of the practices complained of in the foregoing paragraphs has been to deprive Mr. Dore of equal employment opportunities and otherwise to adversely affect his status as an employee because of his disability.

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court:

65. Grant a permanent injunction enjoining the Defendant, its officers, parent(s), successors, assigns, agents, managers, employees and all persons in active concert or participation with it, from engaging in employment practices which discriminate against qualified individuals on the basis of disability;

66. Order the Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices;

67. Order the Defendant to make Mr. Dore whole by providing compensation for past, present, and future pecuniary losses, including job search expenses, resulting from the unlawful employment practices complained of herein, in amounts to be determined at trial, and other affirmative relief as necessary to eradicate the effects of Defendant's unlawful employment practices;

68. Order Defendant to make Mr. Dore whole by providing appropriate back pay with pre-judgment interest and lost benefits, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of the Defendant's unlawful employment practices;

69. Order the Defendant to pay Mr. Dore punitive damages for engaging in intentional discrimination with malice or with reckless indifference, in amounts to be determined at

trial;

70.     Grant such other further relief as the Court deems necessary and proper in the public interest; and

71.     Award the Commission its costs in this action.

## JURY TRIAL DEMANDED

The Commission requests a jury trial on all questions of fact raised by this Complaint.

Dated: September 26, 2018.

                                          Respectfully submitted,

                                          JAMES L. LEE
                                          Deputy General Counsel

                                          GWENDOLYN YOUNG REAMS
                                          Associate General Counsel
                                          U.S. Equal Employment Opportunity Commission
                                          131 M Street, N.E.
                                          Washington, D.C. 20507

                                          ROBERT WEISBERG
                                          Regional Attorney
                                          KIMBERLY A. CRUZ
                                          Supervisory Trial Attorney

                                          s/Carmen Manrara Cartaya
                                          CARMEN MANRARA CARTAYA
                                          Trial Attorney
                                          Florida Bar No.  0073887
                                          U.S. Equal Employment Opportunity Commission
                                          Miami District Office
                                          100 S.E. 2nd Street, Suite 1500
                                          Miami, Florida 33131
                                          Tel: 305-808-1786
                                          Fax: 305-808-1835
                                          Carmen.Cartaya@eeoc.gov